UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DAVID DECAYETTE,

                                        Plaintiff,

                                                            9:06-CV-0783
v.                                                          (TJM/GHL)

GLENN S. GOORD, *et al.*,

                                        Defendants.
_____

APPEARANCES:                               OF COUNSEL:

David Decayette, 92-A-9703
Plaintiff, *pro se*
Five Points Correctional Facility
Caller Box 119
Romulus, NY 14541

HON. ANDREW M. CUOMO               CHRISTINA L. ROBERTS-RYBA, ESQ.
Attorney General for the State of New York
  Counsel for Defendants
The Capitol
New York, NY 12224

GEORGE H. LOWE, United States Magistrate Judge

### <u>REPORT-RECOMMENDATION AND ORDER</u>

        This *pro se* prisoner civil rights action, commenced pursuant to 42 U.S.C. § 1983, has been

referred to me for Report and Recommendation by the Honorable Thomas J. McAvoy, Senior

United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c).  Generally,

David Decayette ("Plaintiff") alleges that in July and August of 2004, while he was incarcerated at

the Franklin Correctional Facility ("Franklin C.F."), ten employees of the New York State

Department of Correctional Services ("DOCS") violated certain of his constitutional rights.  (*See*

*generally* Dkt. No. 1 [Plf.'s Compl.].)  Currently pending before the Court is Defendants' motion

for partial summary judgment[1] pursuant to Fed. R. Civ. P. 56.  (Dkt. No. 36.)  For the reasons that

follow, I recommend that Defendants' motion be granted in part and denied in part.

## I.     BACKGROUND

### A.     Summary of Plaintiff's Complaint

Liberally construed, Plaintiff's Complaint alleges as follows.  (Dkt. No. 1.)  Plaintiff and

another inmate (identified in subsequent pleadings as inmate Rashad) were transferred to Franklin

C.F. on or about the same day.  Certain of Rashad's personal property was missing.  On or about

July 13, 2004, Defendants Sgt. Berry and Corrections Officer Sugg confiscated certain of Plaintiff's

personal property.  These Defendants permitted Rashad, who was gang affiliated, to view Plaintiff's

personal property, including personal photographs.

In his Memorandum of Law submitted in opposition to Defendants' summary judgment

motion, Plaintiff alleges that although Rashad's property was not found among Plaintiff's property,

Rashad nevertheless believed that Plaintiff possessed it.  Rashad threatened Plaintiff, claiming that

while viewing Plaintiff's personal property he had obtained information concerning Plaintiff's

family and their address.  Rashad warned of "serious problems" if he did not get his property back.

Dkt. No. 39, at 8-9.[2]

In his Complaint Plaintiff alleges that he subsequently filed a grievance concerning this

matter.  It appears that the grievance was in the form of a letter to Defendant Goord, then the

Commissioner of DOCS.  Upon the recommendation of Defendant Goord, Plaintiff was interviewed

---

[1]     The motion is made on behalf of all Defendants except Roberts and Schewnki.

[2]     The page numbers referred to in this Report-Recommendation are those assigned by
the ECF system.

by Defendant Lt. Meeks.  Defendant Berry gave Plaintiff "an ultimatum [to] re-write and sign a statement informing Comm. Goord that there was a misunderstanding."  Dkt. No. 1, at 2.  Plaintiff declined to do so, and he was issued a false misbehavior report.

Without being given a formal hearing on the report Plaintiff was taken to the Special Housing Unit ("SHU").  Upon his arrival at SHU he was confronted by Defendants Sgt. Schewnki, Corrections Officer Roberts, and an unidentified Corrections Officer.  They "started reminding the plaintiff about the incident with the statement that he refused to write," (Dkt. No. 1, at 4), and then they beat him.  He suffered significant injuries and endured severe pain, but he was denied medical treatment.

## II.    APPLICABLE LEGAL STANDARDS

### A.    Legal Standard Governing Motions for Summary Judgment

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In determining whether a genuine issue of material[3] fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party.[4]

However, when the moving party has met its initial burden of establishing the absence of any genuine issue of material fact, the nonmoving party must come forward with "specific facts showing

---

[3]      A fact is "material" only if it would have some effect on the outcome of the suit. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

[4]      *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997) [citation omitted]; *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir. 1990) [citation omitted].

that there is a genuine issue for trial."[5]  The nonmoving party must do more than "rest upon the mere allegations . . . of the [plaintiff's] pleading" or "simply show that there is some metaphysical doubt as to the material facts."[6]  Rather, "[a] dispute regarding a material fact is *genuine* if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[7]

Where a plaintiff has failed to respond to a defendant's properly filed and facially meritorious memorandum of law (submitted in support of its motion for summary judgment), the plaintiff is deemed to have "consented" to the legal arguments contained in that memorandum of law under Local Rule 7.1(b)(3) of the Local Rules of Practice for this Court.[8]  Stated another way,

---

[5]      Fed. R. Civ. P. 56(e) ("When a motion for summary judgment is made [by a defendant] and supported as provided in this rule, the [plaintiff] may not rest upon the mere allegations . . . of the [plaintiff's] pleading, but the [plaintiff's] response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the [plaintiff] does not so respond, summary judgment, if appropriate, shall be entered against the [plaintiff].");  *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986).

[6]      *Matsushita*, 475 U.S. at 585-86;  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986);  *see also* Fed. R. Civ. P. 56(e) ("When a motion for summary judgment is made [by a defendant] and supported as provided in this rule, the [plaintiff] may not rest upon the mere allegations . . . of the [plaintiff's] pleading . . . .").

[7]      *Ross v. McGinnis*, 00-CV-0275, 2004 WL 1125177, at *8 (W.D.N.Y. Mar. 29, 2004) [internal quotations omitted] [emphasis added].  The undersigned will provide a copy of all electronically-available-only opinions in this Report-Recommendation to Plaintiff in light of the Second Circuit's recent decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009).

[8]      N.D.N.Y. L.R. 7.1(b)(3) ("Where a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein, the non-moving party's failure to file or serve any papers as required by this Rule shall be deemed as consent to the granting or denial of the motion, as the case may be, unless good cause be shown.");  N.D.N.Y. L.R. 7.1(a) (requiring opposition to motion for summary judgment to contain, *inter alia*, a memorandum of law);  *cf.* Fed. R. Civ. P. 56(e) ("When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's *response* . . . must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does

where a defendant has properly filed a memorandum of law (in support of a properly filed motion for summary judgment), and the plaintiff has failed to respond to that memorandum of law, the only remaining issue is whether the legal arguments advanced in the defendant's memorandum of law are *facially meritorious*.[9]  A defendant's burden in making legal arguments that are facially meritorious has appropriately been characterized as "modest."[10]

Finally, in construing Plaintiff's claims, the Court has afforded Plaintiff's Complaint the liberal construction that all pleadings must be afforded, under Fed. R. Civ. P. 8.  *See* Fed. R. Civ. P. 8(f) ("All pleadings shall be so construed as to do substantial justice.").  Furthermore, the pleadings of *pro se* litigants are construed with even more liberality than is required under Fed. R. Civ. P. 8,[11] and the Court has done so here.  The rationale for extending this special liberality to the pleadings of *pro se* litigants is that, generally, *pro se* litigants are unfamiliar with legal terminology and the litigation process.

---

not so *respond*, summary judgment, if appropriate, shall be entered against the adverse party.") [emphasis added]; *see*, *e.g.*, *Beers v. GMC*, 97-CV-0482, 1999 U.S. Dist. LEXIS 12285, at *27-31 (N.D.N.Y. March 17, 1999) (McCurn, J.) (deeming plaintiff's failure, in his opposition papers, to oppose several arguments by defendants in their motion for summary judgment as consent by plaintiff to the granting of summary judgment for defendants with regard to the claims that the arguments regarded, under Local Rule 7.1[b][3]).

[9]      *Hernandez v. Nash*, 00-CV-1564, 2003 U.S. Dist. LEXIS 16258, at *7-8 (N.D.N.Y. Sept. 10, 2003) (Sharpe, M.J.) (before a motion to dismiss may be granted under Local Rule 7.1[b][3], "the court must review the motion to determine whether it is *facially meritorious*") [emphasis added; citations omitted]).

[10]      *See Ciaprazi v. Goord*, 02-CV0915, 2005 WL 3531464, at *8 (N.D.N.Y. Dec. 22, 2005) (Sharpe, J.; Peebles, M.J.) (characterizing defendants' threshold burden on a motion for summary judgment as "modest") (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-324 (1986)).

[11]      *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000) ("[C]ourts must construe *pro se* pleadings broadly, and interpret them to raise the strongest arguments that they suggest.") [internal quotation marks and citation omitted].

### III.     ANALYSIS

### POINT I

**The claims against Defendants Goord and Allard should be dismissed because of a lack of personal involvement.[12]**

"'[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 [2d Cir. 1991]).[13]  In order to prevail on a cause of action under 42 U.S.C. § 1983 against an individual, a plaintiff must show some tangible connection between the alleged unlawful conduct and the defendant.[14]  If the defendant is a supervisory official, such as a DOCS Commissioner or a correctional facility superintendent, a mere "linkage" to the unlawful conduct through "the prison chain of command" (i.e., under the doctrine of *respondeat superior*) is insufficient to show his or her personal involvement in that unlawful conduct.[15]  In other words, supervisory officials may not be held liable merely because they held a position of authority.[16]  Rather, supervisory personnel may be considered "personally involved" only if they (1) directly participated in the violation, (2) failed to remedy that

---

[12]     Plaintiff failed to respond to Defendants' legal arguments on this point.  *See* discussion at pages 4-5 above.  Nevertheless the Court has performed an independent review of the record.

[13]     *Accord*, *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977), *cert. denied*, 434 U.S. 1087 (1978); *Gill v. Mooney*, 824 F2d 192, 196 (2d Cir. 1987).

[14]     *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).

[15]     *Polk County v. Dodson*, 454 U.S. 312, 325 (1981); *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003); *Wright*, 21 F.3d at 501; *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985).

[16]     *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996).

violation after learning of it through a report or appeal, (3) created, or allowed to continue, a policy or custom under which the violation occurred, (4) had been grossly negligent in managing subordinates who caused the violation, or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring.[17]

With respect to Defendant Goord, in 2004 he was the Commissioner of DOCS.  Dkt. No. 1 at 1.  Defendant Allard was the Superintendent of Franklin C. F.  *Id.*  In his Complaint Plaintiff alleges that he "wrote a letter" to them,[18] advising them as to what had occurred and his concerns. *Id.*, at 2-3.  In his "Statement Pursuant to Rule 7.1(a)(3)," Plaintiff alleges that Goord "ordered an investigation into the incident."  Dkt. No. 39, at 3.  The investigation was conducted by Defendant Meeks.  Dkt. No. 1, at 2; Dkt. No. 39, at 4; Dkt. No. 36-7, at 2-3.

The foregoing does not constitute personal involvement in the alleged constitutional violations.  "Defendant Goord was, during the time in question, entitled to (1) refer letters of complaint to subordinates . . . , and (2) rely on those subordinates to conduct an appropriate investigation and response."  *Fletcher v. Goord*, 07-CV-0707, 2008 WL 4426763, at *17 (N.D.N.Y. Sept. 25, 2008) (Sharpe, J., adopting Report-Recommendation by Lowe, M.J., on *de novo* review); *see also Cabassa v. Gummerson*, 01-CV-1039, 2008 WL 4416411, at *7 (N.D.N.Y. Sept. 24, 2008) (Hurd, J., adopting Report-Recommendation by Lowe, M.J. on *de novo* review) ("[A]s the superintendent of Auburn C.F., Defendant Walker was entitled to rely on his subordinate

---

[17]     *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (adding fifth prong); *Wright*, 21 F.3d at 501 (adding fifth prong); *Williams v. Smith*, 781 F.2d 319, 323-324 (2d Cir. 1986) (setting forth four prongs).

[18]     Beyond Plaintiff's allegation the record reflects only a letter to Defendant Goord, which was forwarded to Defendant Allard.  Dkt. No. 36-7, at 5.

7

correctional officers (including the three members of the Periodic Review Committee) to conduct an appropriate investigation of an issue at the facility, without personally involving Defendant Walker in that issue."); *Garvin v. Goord*, 212 F. Supp.2d 123, 126 (W.D.N.Y. 2002) ("[W]here a commissioner's involvement in a prisoner's complaint is limited to forwarding of prisoner correspondence to appropriate staff, the commissioner has insufficient personal involvement to sustain a § 1983 cause of action."); *cf. Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997) (DOCS Commissioner was not personally involved in alleged constitutional violation where he forwarded plaintiff's letter of complaint to a staff member for decision, and he responded to plaintiff's letter inquiring as to status of matter).

Accordingly, it is recommended that summary judgment be granted in favor of Defendants Goord and Allard, dismissing the Complaint as against them.

## **POINT II**

### **The conduct of Defendants Berry and Sugg in the examination of Plaintiff's personal property did not amount to a constitutional violation.**[19]

As indicated above, Plaintiff and another inmate ("Rashad") were transferred to Franklin C.F. on the same day. Certain of Rashad's personal property was missing. Plaintiff alleges that "Defendants Berry and Sugg elected to allow inmate Rashad to go through Plaintiff's property to look for his missing items." Dkt. No. 39, at 2. Plaintiff's objection appears to be that Berry and Sugg alone should have examined his property and taken an inventory to ascertain whether Rashad's missing property was included with his. *Id.*, at 2-3. Berry and Sugg have declared under oath that at

---

[19]     Plaintiff failed to respond to Defendants' legal arguments on this point. *See* discussion at pages 4-5 above. Nevertheless the Court has performed an independent review of the record.

8

no time did they "allow the plaintiff's property to be viewed by inmate Rashad or any other inmate."

Dkt. No. 36-8, at 2; *see also* Dkt. No. 36-11, at 2-3.  In addition, Plaintiff has no non-hearsay

evidence to support his claim that Rashad examined his property.  Dkt. No. 39, at 3.  Finally,

Plaintiff has not even alleged, not to mention proffered admissible evidence, that Berry and Sugg

knew or should have known that Rashad subsequently would threaten Plaintiff.

        In any event, even assuming *arguendo* that Plaintiff's version of the events is correct, there

were no constitutional violations.  With respect to the Fourth Amendment, it provides that "[t]he

right of the people to be secure in their persons . . . against unreasonable searches . . . shall not be

violated."  U.S. Const. amend IV.  "What is reasonable, of course, depends on all of the

circumstances surrounding the search or seizure and the nature of the search or seizure itself."

*Skinner v. Ry. Labor Executives' Ass'n*, 489 U.S. 602, 619 (1989) (internal quotation marks and

citation omitted).  "Thus, the permissibility of a particular practice is judged by balancing its

intrusion on the individual's Fourth Amendment interests against its promotion of legitimate

governmental interests."  *Skinner*, 489 U.S. at 619 (internal quotation marks and citations omitted).

In so doing, "[c]ourts must consider the scope of the particular intrusion, the manner in which it is

conducted, the justification for initiating it, and the place in which it is conducted."  *Bell v. Wolfish*,

441 U.S. 520, 559 (1979) (citations omitted), *accord*, *Covino v. Patrissi*, 967 F.2d 73, 77 (2d Cir.

1992).  The Fourth Amendment's proscription against unreasonable searches does not apply *at all*

within the confines of a prison cell.  *Hudson v. Palmer*, 468 U.S. 517, 526 (1984).  Therefore,

Plaintiff has not stated a Fourth Amendment claim.

        With respect to the Eighth Amendment, generally, to prevail on a claim of inadequate prison

conditions, a plaintiff must show two things: (1) that the conditions of his confinement resulted in

deprivation that was *sufficiently serious*; and (2) that the defendant acted with *deliberate indifference* to the plaintiff's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Davidson v. Murray*, 371 F. Supp.2d 361, 370 (W.D.N.Y. 2005). "[D]eliberate indifference [for purposes of an Eighth Amendment claim] describes a state of mind more blameworthy than negligence." *Farmer*, 511 U.S. at 835. Here, again assuming *arguendo* that Plaintiff's version of the events is correct, for Defendants Berry and Sugg to have allowed Rashad to go through Plaintiff's property to look for his missing items, at a point in time when they had no reason to anticipate the alleged subsequent events, clearly was not a serious deprivation. Similarly, their conduct, at the most, was negligent, and not deliberately indifferent.

Accordingly, it is recommended that summary judgment be granted in favor of Defendants Berry and Sugg, dismissing Plaintiff's claims based upon the examination of his personal property.

## POINT III

**Plaintiff's excessive force claims against Defendants Allard, Meeks, Berry, Sugg, and Martin should be dismissed**.

In his Complaint Plaintiff alleges that the aforementioned Defendants, along with Defendants Schewnki and Roberts (and John Doe), "wantonly and with malice assaulted and battered him." Dkt. No. 1, at 7. However, in his "Statement Pursuant to Rule 7.1(a)(3)," Plaintiff stated that Defendants Roberts and Schewnki (and John Doe) "beat him"; "those were the only Defendants that beat Plaintiff." Dkt. No. 39, at 5. His deposition testimony was consistent with these statements. Dkt. No. 36-4, at 26-33.

Defendants Schewnki and Roberts have not moved for summary judgment on Plaintiff's excessive force claims. Dkt. No. 36-13, at ii (ftn. 1). Given Plaintiff's concession that only

Defendants Schewnki and Roberts allegedly beat him, it is recommended that summary judgment be granted in favor of all other Defendants, dismissing as against them Plaintiff's Eighth Amendment excessive force claims.

**POINT IV**

**Triable issues of fact exist as to whether Defendant Volpe was deliberately indifferent to a serious medical need.**

To prevail on an Eighth Amendment claim of inadequate medical care, a plaintiff must show two things: (1) that the plaintiff had a *sufficiently serious* medical need; and (2) that the defendant was *deliberately indifferent* to that serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998). To be sufficiently serious for purposes of the Constitution, a medical condition must be "a condition of urgency, one that may produce death, degeneration, or extreme pain." *Nance v. Kelly*, 912 F.2d 605, 607 (2d Cir. 1990) (Pratt, J., dissenting) (citations omitted); *accord*, *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1996), *cert. denied*, 513 U.S. 1154 (1995); *Chance*, 143 F.3d at 702. With respect to the second prong, "deliberate indifference describes a state of mind more blameworthy than negligence;" it is a state of mind akin to criminal recklessness. *Farmer*, 511 U.S. at 827, 835.

The argument of Defendant Volpe (a Registered Nurse) that Plaintiff's Eighth Amendment claim of insufficient medical care should be dismissed as against her opens with the contention that she "was brought into the room after [Plaintiff] was allegedly assaulted by Defendants Roberts and Schewnki." Dkt. No. 36-13, at 10. In support of this contention, Volpe cites to page 39 of the transcript of Plaintiff's deposition, at lines 22-25. It is dismaying to this Court that Volpe failed to cite to the following questions and answers that appear on the same page of the transcript:

11

> Q:    Why is [Volpe] a defendant?  Why do you have her listed here as a
>       defendant?
> A:    Because she was - - she was - - she was in the room at the time during the
>       incident happened and she never entered into the record that she noted that - - she
>       noticed that I was bleeding.
> Q:    She was in the room when you're claiming that the three officers - -
> A:    Right.
> Q:    - - beat you?
> A:    Right.

Dkt. No. 36-4, at 39, lines 5-15.  In his Memorandum of Law[20] Plaintiff states:

> Upon Plaintiff's arrival at the S.H.U.  Defendant Roberts began to physically assault
> Plaintiff, and Sgt. Schewnski eventually joined in the assault as Defendant Volpe
> watched from the doorway.

Dkt. No. 39, at 10.  In his "Statement Pursuant to Rule 7.1(a)(3)" Plaintiff states: "during and after

he was being beat, he saw Defendant Volpe."  Dkt. No. 39, at 5.

In short, there clearly is an issue of fact as to whether Defendant Volpe observed the alleged

beating.  If the trier of fact concludes that she did, and accepts Plaintiff's version of the alleged

beating (punching and slapping both sides of his face, punching him in the ribs, kicking him in the

groin area; *see* Dkt. No. 36-4 at 32-37) and further accepts Plaintiff's version of his condition

following the alleged beating ("multiple bruises, cut above my eye, and as well as blood that was

shown to my underwear and stuff like that"; Dkt. No. 36-4, at 47; *see also* Dkt. No. 1, at 3-5), a

finding of an Eighth Amendment violation would not be unreasonable.

Accordingly, it is recommended that Defendant Volpe's motion for summary judgment

---

[20]    In an Affidavit Plaintiff swears that "[a]ll statements made by me in my Complaint
and associated documents are true."  Dkt. No. 39, at 1.  Fed. R. Civ. P. 56(e) provides: "When a
motion for summary judgment is made [by a defendant] and supported as provided in this rule, the
[plaintiff] may not rest upon the mere allegations . . . of the [plaintiff's] pleading, but the
[plaintiff's] response, by affidavits or as otherwise provided in this rule, must set forth specific facts
showing that there is a genuine issue for trial."  Here the Court is mindful of the special leniency to
be afforded to a *pro se* litigant alleging a civil rights violation.

dismissing Plaintiff's Eighth Amendment claim as against her be denied.

## POINT V

**Triable issues of fact exist as to whether Defendant Volpe is liable for failing to intervene during the alleged beating of Plaintiff.**

Liberally construed, based upon the allegations referenced above in Point IV, Plaintiff has asserted a failure to intervene cause of action against Defendant Volpe.

Law enforcement officials can be held liable under § 1983 for not intervening in a situation where another officer is violating an inmate's constitutional rights. *Jean-Laurent v. Wilkinson*, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008). A state actor may be held liable for failing to prevent another state actor from committing a constitutional violation if "(1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene." *Id.*; *see also Ricciuti v. N.Y.C. Transit Authority*, 124 F.3d 123, 129 (2d Cir. 1997) ("Failure to intercede to prevent an unlawful arrest can be grounds for § 1983 liability.") Whether an officer can be held liable on a failure to intervene theory is generally a question of fact for the jury to decide. *See Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1992) ("Whether an officer had sufficient time to intercede or was capable of preventing the harm being caused by another officer is an issue of fact for the jury unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise.").

Here there are multiple issues of fact, including whether Defendants Schewnki and Roberts beat the Plaintiff, if so whether Defendant Volpe observed the beating, and if so whether she was capable of preventing or mitigating it. Accordingly, it is recommended that dismissal of Plaintiff's

Eighth Amendment failure to intervene claim as against Defendant Volpe be denied.

## POINT VI

**Plaintiff's retaliation claims based upon allegedly false misbehavior reports should be dismissed.[21]**

In order to state a cause of action for retaliation, a plaintiff must plead facts plausibly suggesting that (1) the speech or conduct at issue was protected; (2) the defendant took adverse action against the plaintiff; and (3) there was a causal connection between the protected speech and the adverse action. *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003) (citing *Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir. 2001)).

In his Complaint Plaintiff alleges that "on or about July 26, 2004, after filing a grievance the plaintiff was interviewed by Lt. Meeks, per recommendation by Comm. Glenn Goord." Dkt. No. 1, at 2. This "grievance" presumably was the letter that he wrote to Defendant Goord. *Id.* at 2-3. In his Memorandum of Law Plaintiff alleges that he "was subjected to retaliation by receiving false misbehavior reports, for exercising his first amendment right to file grievances pertaining to the search for his personal property." Dkt. No. 39, at 8. Again, the only "grievance[] pertaining to the search for his personal property" that is reflected in the record is the letter to Defendant Goord.

The Court acknowledges that Plaintiff's right to send a letter of complaint to Defendant Goord was a constitutionally protected activity. *Davis*, 320 F.3d at 352-53. However, first, the only "inmate misbehavior reports" that are reflected in the record were issued by *non-parties*. *See* Dkt. No. 36, Exhibits B and C. In addition, Plaintiff has proffered no evidence whatsoever that these

---

[21]     Plaintiff failed to respond to Defendants' legal arguments on this point. *See* discussion at pages 4-5 above. Nevertheless the Court has performed an independent review of the record.

non-parties were even aware of the existence of his letter to Defendant Goord.  Accordingly, there is

no party defendant in this action against whom Plaintiff has made a retaliation claim based upon an

allegedly false inmate misbehavior report.  Furthermore, there is no evidence of a causal connection

between the protected conduct, *i.e.*, the letter to Defendant Goord, and the "adverse actions," *i.e.*,

the issuance of the inmate misbehavior reports.  Therefore it is recommended that summary

judgment be granted dismissing Plaintiff's retaliation claims based upon allegedly false misbehavior

reports.

## POINT VII

**Triable issues of fact exist with respect to Plaintiff's retaliation claims against Defendants Schewnki and Roberts.[22]**

As noted above, Plaintiff's right to send letters of complaint to Defendant Goord was a

constitutionally protected activity.  *Davis*, 320 F.3d at 352-53.  Also as noted above, Defendants

Schewnki and Roberts are not seeking summary judgment on Plaintiff's excessive force claims.

Questions of fact clearly exist as to whether they took "adverse action" against him.

Finally, on the "causal connection" prong of the retaliation cause of action, in his Complaint

Plaintiff alleges, in paragraph "14", that prior to the commencement of the alleged beating,

Defendants Schewnki and Roberts "started reminding the plaintiff about the incident with the

statement that he refused to write."  Dkt. No. 1, at 4.  This "incident with the statement that he

refused to write" presumably is the one described in paragraph "4" of the Complaint, when

Defendant Berry allegedly gave Plaintiff "an ultimatum [to] re-write and sign a statement informing

---

[22]     Plaintiff has failed to respond to Defendants' legal arguments on this point.
*See* discussion at pages 4-5 above.  Nevertheless the Court has performed an independent review of
the record.

Comm. Goord that there was a misunderstanding." *Id.*, at 2.  In short, there clearly are triable

questions of fact as to whether there was a causal connection between Plaintiff's letter to Defendant

Goord and the alleged beatings by Defendants Schewnki and Roberts.  Accordingly, it is

recommended that Plaintiff's First Amendment retaliation claims against Defendants Schewnki and

Roberts proceed to trial.

## POINT VIII

**Plaintiff's Fourteenth Amendment Due Process claims should be dismissed.**[23]

In his Complaint Plaintiff alleges that he was not "afforded substantive Due Process" and

that his Fourteenth Amendment right "against arbitrary and capricious conduct"[24] was violated.

Dkt. No. 1, at 6 and 7.  However, as the Supreme Court has repeatedly held, "if a constitutional

claim is covered by a specific constitutional provision, such as the Fourth . . . Amendment, the claim

must be analyzed under the standard appropriate to that specific provision, not under the [more

generalized notion] of substantive due process." *United States v. Lanier*, 520 U.S. 259, 272, n.7

(1997) (citing *Graham v. Connor*, 490 U.S. 386, 392-94 [1989]).  Because the Court has already

analyzed Plaintiff's claims under the appropriate specific legal standards, an analysis is not required

under the Fourteenth Amendment substantive due process standard.

---

[23]      Plaintiff has failed to respond to Defendants' legal arguments on this point.
*See* discussion at pages 4-5 above.  Nevertheless the Court has performed an independent review of
the record.

[24]      "Substantive due process protects individuals against government action that is
arbitrary, . . . conscience-shocking, . . . or oppressive in a constitutional sense, . . . but not against
constitutional action that is incorrect or ill-advised."  *Lawrence v. Achtyl*, 20 F.3d 529, 537 (2d Cir.
1994) [internal quotations marks and citations omitted], *aff'g*, 91-CV-1196, Memorandum-Decision
and Order (N.D.N.Y. Jan. 26, 1993) (DiBianco, M.J.) (granting summary judgment to defendants in
inmate's civil rights action).

However, in addition to substantive due process, the Due Process Clause of the Fourteenth Amendment has a procedural component. *Zinernon v. Burch*, 494 U.S. 113, 125 (1990). The procedural component bars "the deprivation by state action of a constitutionally protected interest in life, liberty, or property . . . *without due process of law*." *Id*. at 125-126 [internal quotations marks and citations omitted; emphasis in original]. In his Memorandum of Law Petitioner argues that "Defendants Sugg and Berry violated his Procedural Due Process Rights . . . against unreasonable searches." Dkt. No. 39, at 8.

"[Courts] examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State . . . ; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Kentucky Dept. of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). Here the Court already has conducted the first step analysis of the conduct of Defendants Berry and Sugg and found no deprivation of a property interest. *See* Point II above. Therefore an analysis is not required under the Fourteenth Amendment procedural due process standard.

Accordingly, it is recommended that the Defendants' motion for summary judgment dismissing Plaintiff's Fourteenth Amendment due process claim be granted.

## POINT IX

### Qualified Immunity[25]

The doctrine of qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional

---

[25]    Plaintiff has failed to respond to Defendants' legal arguments on this point. *See* discussion at pages 4-5 above. Nevertheless the Court has performed an independent review of the record.

17

rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 129 S.Ct. 808, 815

(2009) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 812 (1982)).  A determination of this issue

involves deciding whether the facts that a plaintiff has alleged, or shown, make out a violation of a

constitutional right, and whether the right at issue was clearly established at the time of the

defendant's alleged misconduct.  *Pearson*, 129 S. Ct. at 815-16 (citing *Saucier v. Katz*, 533 U.S.

194 (2001)).

A right is sufficiently clearly established if 'it would be clear to a reasonable officer that his

conduct was unlawful in the situation he confronted.'" *Higazy v. Templeton*, 505 F.3d 161, 169, n.8

(2d Cir. 2007).  The following three factors are considered when determining whether a particular

right was clearly established at the time a defendant acted:

> (1) whether the right in question was defined with 'reasonable specificity'; (2)
> whether the decisional law of the Supreme Court and the applicable circuit court
> support the existence of the right in question; and (3) whether under preexisting law
> a reasonable defendant official would have understood that his or her acts were
> unlawful.

*Jermosen v. Smith*, 945 F.2d 547, 550 (2d Cir. 1991) (citations omitted), *cert. denied*, 503 U.S. 962

(1992).[26]  "As the third part of the test provides, even where the law is 'clearly established' and the

scope of an official's permissible conduct is 'clearly defined,' the qualified immunity defense also

protects an official if it was 'objectively reasonable' for him at the time of the challenged action to

---

[26]      *See also Pena v. DePrisco*, 432 F.3d 98, 115 (2d Cir. 2005); *Clue v. Johnson*, 179
F.3d 57, 61 (2d Cir. 1999); *McEvoy v. Spencer,* 124 F.3d 92, 97 (2d Cir. 1997); *Shechter v.
Comptroller of City of New York,* 79 F.3d 265, 271 (2d Cir. 1996); *Rodriguez v. Phillips*, 66 F.3d
470, 476 (2d Cir. 1995); *Prue v. City of Syracuse*, 26 F.3d 14, 17-18 (2d Cir. 1994); *Calhoun v. New
York State Division of Parole*, 999 F.2d 647, 654 (2d Cir. 1993).

believe his acts were lawful." *Higazy*, 505 F.3d at 169-70 (citations omitted).[27]  This "objective

reasonableness" part of the test is met if "officers of reasonable competence could disagree on [the

legality of defendant's actions]."  *Malley v. Briggs*, 475 U.S. 335, 341 (1986).  As the Supreme

Court has explained,

> [T]he qualified immunity defense . . . provides ample protection to all but the plainly
> incompetent or those who knowingly violate the law. . . . Defendants will not be
> immune if, on an objective basis, it is obvious that no reasonably competent officer
> would have concluded that a warrant should issue; but if officers of reasonable
> competence could disagree on this issue, immunity should be recognized.

*Malley*, 475 U.S. at 341.

However, when "there are facts in dispute that are material to a determination of

reasonableness," dismissal on the basis of a qualified immunity defense is inappropriate.  *Thomas v.

Roach*, 165 F.3d 137, 143 (2d Cir. 1999); *Ali v. Szabo*, 81 F. Supp. 2d 447, 461 (S.D.N.Y. 2000)

("The Court cannot conclude as a matter of law that [the officers'] conduct was objectively

reasonable since there are material issues of fact as to whether [plaintiff] was obeying the officers'

order and who started the physical confrontation.").

The Court has recommended that Defendant Volpe should not be entitled to summary

judgment because triable issues of fact exist as to whether she was deliberately indifferent to a

serious medical need of Plaintiff's and as to whether she is liable for failing to intervene during the

---

[27]     *See also Anderson v. Creighton*, 483 U.S. 635, 639 (1987) ("[W]hether an official
protected by qualified immunity may be held personally liable for an allegedly unlawful official
action generally turns on the 'objective reasonableness of the action.'") [citation omitted]; *Davis v.
Scherer*, 468 U.S. 183, 190 (1984) ("Even defendants who violate [clearly established]
constitutional rights enjoy a qualified immunity that protects them from liability for damages unless
it is further demonstrated that their conduct was unreasonable under the applicable standard.");
*Benitez v. Wolff*, 985 F.2d 662, 666 (2d Cir. 1993) (qualified immunity protects defendants "even
where the rights were clearly established, if it was objectively reasonable for defendants to believe
that their acts did not violate those rights").

alleged beating of Plaintiff.  Therefore, Defendant Volpe should not be entitled to summary

judgment on the defense of qualified immunity.  *See Hemphill v. Schott*, 141 F.3d 412, 418 (2d Cir.

1998) ("[S]ummary judgment based either on the merits or on qualified immunity requires that no

disputes about material facts remain.") (citations omitted); *Deal v. Yurack*, No. 9:04-CV-0072, 2007

WL 2789615, at *14 (N.D.N.Y. Sept. 24, 2007) (Kahn, J.) (adopting Report-Recommendation of

Magistrate Judge David E. Peebles, finding that whether "the defendants maintained a good faith

belief that their actions did not violate clearly established rights depends on the resolution of fact

issues similar to those identified as precluding entry of summary judgment on the merits of

plaintiff's retaliation and excessive force claims.  As such . . . the court is not currently positioned to

determine defendant's entitlement to qualified immunity.").[28]  Accordingly, I recommend denying

summary judgment in this regard.

>**ACCORDINGLY**, it is

>**RECOMMENDED** that summary judgment be granted dismissing all claims against

Defendants Goord, Allard, Berry, Meeks, Martin, and Sugg; and it is further

>**RECOMMENDED** that Defendant Volpe's motion for summary judgment be denied; and it

is further

>**RECOMMENDED** that the case proceed to trial against Defendants Volpe, Schewnki and

Roberts on Plaintiff's Eighth Amendment claims of excessive force and failure to intervene, against

---

[28]     *See also Jeanty v. County of Orange*, 379 F. Supp. 2d 533, 542 (S.D.N.Y. 2005)
("[T]he same genuine issues of material fact that preclude summary judgment on plaintiff's
excessive force claim, also preclude application of the defense of qualified immunity at the
summary judgment stage."); *Dellamore v. Stenros*, 886 F. Supp. 349, 352 (S.D.N.Y. 1995) (finding
that material factual disputes exist on the issue of qualified immunity for the same reasons that the
court denied the motion for summary judgment on the plaintiff's Eighth Amendment excessive force
claim).

Defendants Schewnki and Roberts on Plaintiff's First Amendment retaliation claims, and against

Defendant Volpe on Plaintiff's Eighth Amendment claim of inadequate medical care; and it is

further

**ORDERED** that the Clerk serve copies of the electronically-available-only opinions cited on

pages 4, 5, 7, and 20 of this Report-Recommendation on Plaintiff.

**ANY OBJECTIONS to this Report-Recommendation must be filed with the Clerk of**

**this Court within TEN (10) WORKING DAYS, PLUS THREE (3) CALENDAR DAYS from**

**the date of this Report-Recommendation (unless the third calendar day is a legal holiday, in**

**which case add a fourth calendar day)**.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b);

N.D.N.Y. L.R. 72.1(c); Fed. R. Civ. P. 6(a)(2), (d).

**BE ADVISED that the District Court, on *de novo* review, will ordinarily refuse to**

**consider arguments, case law and/or evidentiary material that could have been, but was not,**

**presented to the Magistrate Judge in the first instance.**[29]

---

[29]      *See, e.g., Paddington Partners v. Bouchard*, 34 F.3d 1132, 1137-38 (2d Cir. 1994)
("In objecting to a magistrate's report before the district court, a party has no right to present further
testimony when it offers no justification for not offering the testimony at the hearing before the
magistrate.") [internal quotation marks and citations omitted]; *Pan Am. World Airways, Inc. v. Int'l
Bhd. of Teamsters,* 894 F.2d 36, 40 n.3 (2d Cir. 1990) (district court did not abuse its discretion in
denying plaintiff's request to present additional testimony where plaintiff "offered no justification
for not offering the testimony at the hearing before the magistrate"); s*ee also Murr v. U.S.*, 200 F.3d
895, 902, n.1 (6th Cir. 2000) ("Petitioner's failure to raise this claim before the magistrate constitutes
waiver."); *Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996) ("Issues raised for the first time
in objections to the magistrate judge's recommendations are deemed waived.") [citations omitted];
*Cupit v. Whitley*, 28 F.3d 532, 535 (5th Cir. 1994) ("By waiting until after the magistrate judge had
issued its findings and recommendations [to raise its procedural default argument] . . . Respondent
has waived procedural default . . . objection[].") [citations omitted]; *Greenhow v. Sec'y of Health &
Human Servs.*, 863 F.2d 633, 638-39 (9th Cir. 1988) ("[A]llowing parties to litigate fully their case
before the magistrate and, if unsuccessful, to change their strategy and present a different theory to
the district court would frustrate the purpose of the Magistrates Act."), *overruled on other grounds
by U.S. v. Hardesty*, 977 F.2d 1347 (9th Cir. 1992); *Patterson-Leitch Co. Inc. v. Mass. Mun.*

**BE ALSO ADVISED that the failure to file timely objections to this Report-Recommendation will PRECLUDE LATER APPELLATE REVIEW of any Order of judgment that will be entered**.  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of H.H.S.*, 892 F.2d 15 [2d Cir. 1989]).

Dated: March 31, 2009
      Syracuse, New York

George H. Lowe
United States Magistrate Judge

---

*Wholesale Elec. Co.*, 840 F.2d 985, 990-91 (1st Cir. 1988) ("[A]n unsuccessful party is not entitled as of right to de novo review by the judge of an argument never seasonably raised before the magistrate.") [citation omitted].